IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-448-DGW |
| | ) | |
| DR. FEINERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

**WILKERSON, Magistrate Judge:**

Now pending before the Court are the Motion for Summary Judgment filed by Defendant, Adrian Feinerman, on September 7, 2012 (Doc. 50) and the Motion for Post-Hearing Determination filed by Plaintiff, Robert Williams, on November 5, 2012 (Doc. 68).  For the reasons set forth below, Defendant's Motion is **GRANTED** and Plaintiff's Motion is **DENIED AS MOOT**.

### INTRODUCTION

Plaintiff alleges that Defendant, Dr. Adrian Feinerman, was deliberately indifferent to a serious medical need when he refused to provide adequate care or pain medication for a dislocated finger in May, 2009.   At the time, Plaintiff was an inmate at the Menard Correctional Center.   A month after the injury, Plaintiff was seen by an orthopedic specialist and underwent surgery on the finger on June 26, 2009.   Plaintiff further alleges that after the surgery, Dr. Feinerman did not properly follow the surgeon's advice as to physical therapy, thereby causing additional pain and suffering.

Defendant filed his Answer on July 26, 2012 in which he raised the affirmative defense that

Plaintiff failed to exhaust his administrative remedies.   Briefing was ordered and a hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on October 30, 2012 in which Plaintiff appeared by video-conference and Defendant appeared in person.   At the hearing, the parties both agreed that the two relevant grievances are dated May 25, 2009 and March 11, 2010.

## BACKGROUND

In the May 25, 2009 grievance, Plaintiff outlines how he injured his finger and notes that he was seen by Dr. Feinerman, on May 13, 2009, who treated his finger by "set[ting] it in place" and applying tape (Doc. 52-6, pp. 2-4).   He goes on to state that Dr. Feinerman cancelled a medical "pass" on May 21, 2013 and that his finger had returned to the previous injured position.   He ends the grievance by stating that the finger would need to be set by a bone specialist "and not Dr. Feinerman because he doesn't know what he is doing."   Plaintiff's counselor, B. Muelleran, responded to the grievance on June 18, 2009 by noting that the Director of Nursing provided a memo in response.[1]   The memo, signed by Nurse Christine Brown and dated June 17, 2009, indicates that Plaintiff was seen by a specialist on June 8, 2009 and that his treatment options were explained (Doc 59, p. 12).   The memo also includes a notation: "CC. Grievance file, Grievance Office" (*Id.*).   There is no evidence that Plaintiff himself submitted the grievance to the grievance office.   Plaintiff did, however, send the grievance to the Administrative Review Board (ARB) which responded on July 24, 2009 (Doc. 52-7, p. 1).   The ARB noted that Plaintiff must submit a grievance with the grievance officer's and the chief administrative officer's signatures in order to appeal (*Id.*).

---

[1] Plaintiff also submitted a grievance dated June 2, 2009 which grieved the same matters raised in the May, 25, 2009 grievance.   The June 2 grievance also was responded to by Plaintiff's counselor on June 18, 2009 and there is no indication that Plaintiff appealed this grievance (Doc. 52-6, p. 1)

The March 11, 2010 grievance concerned treatment provided by Dr. Fahim on March 8, 2010.   In this grievance, Plaintiff complains of the medical treatment provided by Dr. Fahim and also states, at the end of the grievance, that had Dr. Feinerman sent him to Statesville Correctional Center or followed through with physical therapy, he would not be in the condition that he is in (*Id.* p. 5).   There is no question that this grievance was sufficiently exhausted.

Dr. Feinerman left his position at Menard in September, 2009, at which point he no longer treated Plaintiff.

**S<small>TANDARD</small>**

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." F<small>EDERAL</small> R<small>ULE OF</small> C<small>IVIL</small> P<small>ROCEDURE</small> 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).   The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).   *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).   A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*   The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it

has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.   In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.   *Id.* 544 F.3d at 742.   If a Plaintiff has exhausted his remedies, the case will proceed on the merits.   If, however, a Plaintiff has not exhausted, the Court may either allow

Plaintiff to exhaust or terminate the matter.

### DISCUSSION

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.   ILL. ADMIN. CODE TIT. 20, § 504.810(a).   If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b).   The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance.   *Id.* § 504.830(d).   The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d).   An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO.   If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken.   *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but

on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009).   If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).   An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Plaintiff failed to exhaust the May 25, 2009 grievance by failing to submit the grievance to the grievance office.   The regulations provide that "[i]f an offender is unable to resolve the complaint informally  . . . the individual may file a written grievance . . . ."   ILL. ADMIN. CODE TIT. 20, § 504.810(a).   The regulations anticipate that a problem may be resolved to an offender's satisfaction by a counselor, thus making the filing of a grievance with the grievance office unnecessary.   The regulations also anticipate that an offender may not elect to raise a concern with the grievance office even though the problem was raised (and perhaps unresolved) with a counselor.   Either way, the regulations place the burden on Plaintiff to submit a grievance to the grievance office.   Plaintiff in this matter readily admitted that he assumed from Nurse Brown's memo, and the "Cc" notation, that his complaint was forwarded to the grievance office for consideration.   Such an assumption is unreasonable.   First, Plaintiff has the burden of submitting a grievance to the grievance office.   Second, there would have been no way that Nurse Brown could have known that her answer was unsatisfactory, especially because he was seen by a specialist, as requested in the grievance.   The failure to exhaust in this instance is attributable to Plaintiff's mistaken belief that another person could submit a grievance to the grievance office on

his behalf.

As to the second, March 11, 2010, grievance, while Dr. Feinerman is mentioned in the body of the grievance, Plaintiff seeks no relief against him and appears to have included Dr. Feinerman to provide historical context for his complaints against Dr. Fahim.   In addition, the grievance was filed 6 months after Dr. Feinerman last provided medical care.   The grievance is therefore unrelated to Dr. Feinerman and untimely, errors that are attributable to Plaintiff.

### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant, Adrian Feinerman, on September 7, 2012 (Doc. 50) is **GRANTED** and the Motion for Post-Hearing Determination filed by Plaintiff, Robert Williams, on November 5, 2012 (Doc. 68) is **DENIED AS MOOT**.   The Clerk is **DIRECTED** to enter judgment in favor of Defendant, Adrian Feinerman, and against Plaintiff.

**CASE TERMINATED.**

**DATED: June 3, 2013**

**DONALD G. WILKERSON**
**United States Magistrate Judge**